**HENDERSON et al. v. C. M. THIBO-DEAUX CO., Limited.**

**No. 1779.**

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

C. A. Blanchard, of Donaldsonville, for appellants.

Simmons, Simmons & Dolese, of Napoleonville, for appellee.

DORE, Judge.

The plaintiffs, six in number, sue to annul a judgment rendered against them on the 19th day of September, 1935, in favor of the defendant, C. M. Thibodeaux, Company, Limited, which judgment was by default and recognized the Thibodeaux Company to be the owner of certain lands situated in Assumption parish and entitled to the possession thereof. This suit to annul said judgment was filed September 17, 1936, and, after a trial, resulted in a judgment in favor of defendant dismissing the plaintiffs' suit. Plaintiffs have appealed.

The grounds alleged for annulling the judgment are as follows: That shortly after being served with citation in the suit of Thibodeaux Company against them, and before time for answer had expired, plaintiffs here, who were defendants in that suit, went to the office of the attorneys representing the Thibodeaux Company with a view of exhibiting their titles to said attorneys so as to show their ownership of the land for which plaintiffs had been sued; that one of the attorneys representing said Thibodeaux Company, after examining said titles, advised plaintiffs, defendants in the former suit, that their title appeared to be good, and that their client, Thibodeaux Company, did not have any title, and that he, said attorney, would dismiss said suit of Thibodeaux Company against them; that they relied on the statement made to them by said attorney and made no further effort to defend said suit, but were lulled into the belief that said suit against them would be dismissed, and they had no knowledge that the judgment had been rendered against them until almost a year later when ejectment proceedings were instituted against them. Plaintiffs aver that the judgment was secured against them under such circumstances and by such ill practices as to justify its annullment under article 607 of the Code of Practice.

Defendant, Thibodeaux Company, denies that plaintiffs were misled, or that any misrepresentations were made to them, and specially denies that any member of the law firm representing said Thibodeaux Company in the former suit ever told the present plaintiffs that the suit against them would be dismissed.

All six plaintiffs testified that they went to see Mr. Dolese, a member of the firm of Simmons, Simmons & Dolese, who were the attorneys for Thibodeaux Company in the suit against plaintiffs. The reason given by them for going to see the attorneys for the plaintiff in the suit against them was that they wanted to prove that they had a title to the land for which they had been sued, and to avoid a lawsuit. The substance of the testimony of all plaintiffs as to the conversation between them and Mr. Dolese is that they showed him their title; that Mr. Dolese took their title and examined it, and then had his stenographer make some copies from it; that Mr. Dolese told them that their title looked good, and if Thibodeaux Company could not show a better title, he would dismiss the suit. There are some differences in the testimony of these six witnesses as to exactly what Mr. Dolese said. One witness did not hear him say that he would dismiss the suit if Thibodeaux Company could not show a better title; some say that Mr. Dolese told them if he needed them any further, he would send for them; while some of them did not hear such a statement, or at least did not testify to it. These discrepancies are important, because if Mr. Dolese made either statement, that fact would have considerable bearing on the case. It appears that plaintiffs are ignorant negroes, unable to read and write. Therefore, if the attorney did tell them that he would dismiss the suit if Thibodeaux Company could not show a better title, and that he would send for them if he needed them further, such a statement coming from the attorney representing the other side of the case would be well calculated to mislead and lull these ignorant negroes into the belief that it was not nec-

essary for them to make any further defense.

It is rather significant, as well as important, that all these six witnesses who were present and are supposed to have heard all that that attorney said, differ so much on these two vital points. Mr. Dolese testified that these parties came in his office and told him that they were looking for Mr. Thibodeaux's lawyer, to which he replied that he was one of them; that one of them gave him a copy of a sale in the name of all defendants in that suit; that he told them he was not handling the suit, but Mr. Simmons was handling it; that he made a copy of the deed to give Mr. Simmons when he returned, and, after looking over the deed, he told them that it seems that the deed did give them a title to some land, but exactly where it was he could not tell them; that if they intended to claim title to the land in suit they would have to show something better than that title, but that he would tell Mr. Simmons they had been to the office and let them know. Mr. Dolese denies emphatically that he told them he would dismiss the suit, if Thibodeaux Company could not show a better title, or that he told them that he would send for them if he needed them. On the return of Mr. Simmons the next day, he told him what had transpired.

On July 15, 1935, Simmons, Simmons & Dolese wrote a letter addressed to Mack Singleton et als., Amelia, P. O. La., which letter was drafted by Mr. A. N. Simmons, stating that Mr. Dolese had advised the writer of their visit to the office to see about the suit against them of Thibodeaux Company; that the writer had made an examination of the titles, and if they would come to the office again, the writer would be able to show them that they were in error in claiming the land involved in the suit; that he could show them where the land which they claimed was in St. Mary parish in the same section as land owned by the Thibodeaux Company.

This letter was never returned. Mack Singleton, the one of plaintiffs who seemed to be handling the case mostly for the others, denies getting this letter, but it is shown by two witnesses that he admitted getting the letter. In addition to the presumption that a letter properly addressed is duly received where it has a return address and is not returned, the admission made by the plaintiff Mack Singleton to others that he did receive the letter is sufficient to prove its receipt.

The default was confirmed for more than two months after the letter was written. Plaintiffs made no further effort to defend the suit or find out what had been done about it. Their own neglect and indifference was the cause of their failure to defend the suit. The trial judge, who heard and probably knew most of the witnesses, did not believe that these plaintiffs were misled or thrown off guard in making a defense to the suit against them by anything that was said or done by Mr. Dolese. We find no occasion to differ with his finding of fact.

We are not unmindful of the fact that an attorney who discusses a case with his client's adversaries is charged with a great deal of care and precaution, especially where these parties are illiterate and may be easily influenced in what the attorney says or does. While the attorney in such a situation is not required to look after the interest or advise the opposing litigants, yet he should not do or say anything by which they be misled in their actions or lulled into nonaction in making a defense. Succession of Gilmore, 157 La. 130, 102 So. 94.

But in this case we do not find from the facts that the attorney in discussing the case with the opposite parties said anything by which they could have been misled; nor do we believe that they were misled or thrown off their guard. Particularly is this true in view of the fact that the attorneys wrote a letter to one of the parties who seemed to be representing the others advising them of facts which would put them on notice of the necessity of making a defense, if they had any to make.

For these reasons, the judgment appealed from is affirmed at appellants' cost.